UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**GLORIA JEAN FOWLER,**

           **Plaintiff,**          **CIVIL ACTION NO. 12-12682**

    **vs.**

                            **DISTRICT JUDGE BERNARD A. FRIEDMAN**

**COMMISSIONER OF**           **MAGISTRATE JUDGE MONA K. MAJZOUB**
**SOCIAL SECURITY,**

           **Defendant.**
_____/

## REPORT AND RECOMMENDATION

**I.**    **RECOMMENDATION:**  This Court recommends that Plaintiff's motion for summary judgment (docket no. 11) be denied, Defendant's motion for summary judgment (docket no.12) be granted, and Plaintiff's complaint be dismissed.

**II.**    **PROCEDURAL HISTORY:**

       Plaintiff filed an application for a period of disability and disability insurance benefits on December 17, 2009, alleging disability beginning October 29, 2009.  (TR 144-50).  The Social Security Administration denied benefits and Plaintiff filed a timely request for a *de novo* hearing. On March 23, 2011 Plaintiff appeared with counsel in Oak Park, Michigan and testified at a hearing held before Administrative Law Judge (ALJ) Patricia S. McKay.  (TR 30-75).  Vocational Expert (VE) Dr. Christian Barrett, Ph.D., also appeared and testified at the hearing.  In a May 27, 2011 decision the ALJ found that Plaintiff was not entitled to disability benefits because she remained capable of performing a significant number of jobs existing in the national economy.  The Appeals Council declined to review the ALJ's decision and Plaintiff filed a timely complaint for judicial

1

review. The parties filed cross motions for summary judgment which are currently before the Court.

## III.   PLAINTIFF'S TESTIMONY AND MEDICAL EVIDENCE

### A.   Plaintiff's Testimony

Plaintiff was forty-seven years old on her alleged disability onset date. (TR 24). She lives in an upper apartment with her adult daughter and minor child. (TR 38-39). She obtained her GED and became certified as a pharmacy technician in or around 2006. (TR 40-41, 197). She was employed in temporary positions which included work as a cashier, as a postal worker sorting mail, as a census worker, and as a City of Detroit employee performing general errands and data entry. (TR 41-49). She relies on public transportation because she does not have a driver's license. (TR 54).

Plaintiff testified that she suffers from depression, anxiety, and low back and leg pain. (TR 49, 63). She stated that she is unable to feel her feet, she has difficulty buttoning clothing with her left hand, and she is unable to bend, twist, or turn. (TR 49, 66-67). She testified that she can stand for only seven to eight minutes at a time before needing to sit, walk up to fifteen minutes at a time before needing to rest, and lift a gallon of milk. (TR 65-66). Plaintiff testified that she is unable to work because she needs to rest all day. (TR 61-62, 64). She testified that she is able to take care of her personal hygiene, she can put dinner in the oven and make a salad, but she does not do any housekeeping. (TR 55-56). She testified that she enjoys reading and watching medical and spiritual programs on the television. (TR 56-57).

### B.   Medical Evidence

Plaintiff was treated at Henry Ford Health System between October 2008 and November 2009. (TR 223-270). The record shows that Plaintiff presented to the Henry Ford Health System

2

in October 2008 complaining of chronic lower back pain, a three week history of left lower leg pain, and a three day history of left lower limb numbness. (TR 259, 269). Plaintiff reported that her pain was worse at night with lying down or sleep. (TR 255). She treated her pain symptoms with Tylenol #4. (TR 259). On physical examination Plaintiff was observed to have full strength in the bilateral lower extremities, no loss of light touch sensation, negative bilateral straight leg raises, no focal neurological deficit, and no restriction of the lumbar spine range of motion. (TR 260). Dr. Vinay Shah and Dr. Tanmay Swadia, the supervising physician and resident, concluded that Plaintiff's condition was musculoskeletal and recommended physical therapy.

Subsequent examinations showed reduced left ankle reflex along with positive straight leg tests on Plaintiff's left side with tenderness on palpation over the left parasternal muscles on her lower back, suggestive of spinal nerve radiculopathy. (TR 249, 253, 256). During a physical examination in November 2008 Plaintiff was unable to walk on her left heel or left toes. In December 2008 Dr. Arnaout examined Plaintiff and documented that she should be watched closely as she may be malingering, stating that Plaintiff was sitting quietly when the doctor came into the room but soon started "doing strange gyrations of her leg and foot." (TR 250). At a later examination in February 2009, Plaintiff was observed to ambulate without difficulty. (TR 242, 253). Neurosurgeon Dr. Mahmood recommended that Plaintiff undergo an L5-S1 hemilaminectomy and discectomy in June 2009. He also recommended that Plaintiff refrain from working between June and August 5, 2009 for post-operative recovery. (TR 281). The record shows that Plaintiff did not follow through with the recommended surgery. (TR 227, 235, 283).

X-rays of the lumbosacral spine dated November 2008 revealed unremarkable sacroiliac joints, no evidence of fracture or dislocation of the lumbosacral spine, but mild degenerative facet

changes at the lower lumbar spine.  An MRI of the lumbar spine dated March 2009 revealed very minimal bilateral facet degenerative changes, with a broad-based disc bulge causing moderate left foraminal stenosis and mild compression of the exiting left L5 and descending left S1 nerve roots. (TR 264).  An MRI dated December 2010 revealed degenerative disc bulge at L5-S1 with shallow right extraforaminal disc protrusion adjacent to the exiting nerve root.  (TR 334).

Dr. Jose Morelos completed a physical residual functional capacity assessment in January 2010.  (TR 271-78).  Dr. Morelos found that Plaintiff could occasionally lift or carry twenty pounds and frequently lift or carry ten pounds, stand, walk, or sit about six hours in an eight hour workday, with unlimited push/pull activities.  The doctor opined that Plaintiff could frequently balance and kneel, occasionally stoop, crouch, crawl, and climb ramps or stairs, and never climb ladders, ropes, or scaffolds.  He found that Plaintiff had no environmental limitations except that she should avoid concentrated exposure to extreme cold and vibration and avoid even moderate exposure to environmental hazards.   The doctor found that Plaintiff had no manipulative, visual, or communicative limitations.

Dr. David Hong, neurosurgeon, evaluated Plaintiff on January 20, 2010.  (TR 339-41).  The doctor documented that Plaintiff had full strength in the bilateral upper and lower extremities and she was ambulating independently without difficulty except with mild antalgia due to left leg pain. He noted that Plaintiff's MRI showed a mild disc bulge at L5-S1, worse on the right, causing some mild foraminal stenosis, also worse on the right. The doctor concluded that Plaintiff was not a good surgical candidate because her MRI showed more significant abnormalities on the right side.  He also concluded that Plaintiff had not yet exhausted all conservatives measures.  He recommended physical therapy and epidural nerve injections.

4

Plaintiff returned to Dr. Mahmood for evaluation in March 2010. (TR 280-83). Dr. Mahmood observed that Plaintiff's pain score was a ten out of ten, her range of motion was decreased in the back and somewhat in the lower extremities, but her strength was normal. He documented that he would repeat her MRI and if that showed a clearcut disc herniation he would consider performing surgery. In November 2010 Dr. Mahmood completed a physical assessment of Plaintiff's ability to do work-related activities in November 2010. (TR 301-06). The doctor opined that Plaintiff could lift or carry fifteen pounds, had an impaired ability to stand, walk, sit, reach, and push/pull, but she could follow work rules, relate to co-workers, interact with supervisors and the public, use judgment, function independently, deal with work stresses, and maintain attention and concentration. The doctor found that Plaintiff could never climb, balance, stoop, crouch, kneel, or crawl, she had no environmental limitations, and she needed to lie down during the day. (TR 288, 301-06).

## IV.   VOCATIONAL EXPERT TESTIMONY

The VE testified that Plaintiff's past employment as a postal worker was unskilled work at a medium exertional level, past work as a census taker and as a general office clerk for the City of Detroit was unskilled work at a light exertional level, and her past work as a data entry clerk was semi-skilled work at a sedentary exertional level. (TR 69). The ALJ asked the VE to testify whether jobs were available for an individual with Plaintiff's age, education, and past work experience who had the residual functional capacity (RFC) to perform the full range of light work but with the following limitations: (1) lift and carry up to fifteen pounds, (2) ability to change positions between sitting and standing while working, (3) occasional climbing stairs, crouching, crawling, kneeling, stooping, or bending, and no climbing of ladders, and (4) occasional use of her left lower extremity

5

to operate foot controls. (TR 70). The VE testified that the individual would not be able to perform Plaintiff's past work, but could perform unskilled, light exertional work with a sit/stand option as a bench assembler, inspector, packager and sorter, comprising 6,000 jobs in the metropolitan area. (TR 70-71). The VE testified that the listed jobs consist of simple, routine, repetitive jobs that are not production assembly work.

The VE testified that an individual who required sedentary work along with the above listed limitations could perform jobs similar to those listed except with smaller and lighter objects, comprising approximately 3,000 jobs in the metropolitan area. (TR 71). The VE further testified that the individual would be capable of performing the listed jobs if she also required only occasional contact with co-workers, supervisors, or the general public. (TR 71-72). If the individual would need to rest for up to fifteen minutes every hour she would be precluded from full time competitive work. (TR 72). The VE testified that work would also be precluded if Plaintiff's testimony was considered fully credible. (TR 72).

## V.    ADMINISTRATIVE LAW JUDGE'S DETERMINATION

The ALJ found that although Plaintiff had not engaged in substantial gainful activity since October 29, 2009, the alleged onset of disability date, and suffered from the severe impairments of degenerative disc disease and herniation of the L5-S1 lumbar spine with mild compression of exiting left nerve roots, bilateral hallux valgus with bunion deformity, hammer toe deformity to the left second digit and metatarsalgia sub fourth head bilaterally, she did not have an impairment or combination of impairments that meets or medically equals a listed impairment. (TR 19-21). The ALJ found that Plaintiff retained the RFC to perform light work with the following limitations: (1) lifting and carrying up to fifteen pounds, (2) occasional climbing of stairs, crouching, crawling,

kneeling, stooping, bending, and no climbing of ladders, (3) occasional use of her left lower extremity for foot controls/pedals, and (4) with the opportunity to alternate between sitting and standing at her discretion while working. (TR 21-24). The ALJ concluded that Plaintiff was not under a disability as defined in the Social Security Act from October 29, 2009, the alleged onset of disability date, through May 27, 2011, the date of the ALJ's decision, because she remained capable of performing a significant number of jobs existing in the national economy. (TR 24-26).

## VI.   LAW AND ANALYSIS

### A.   Standard Of Review

Pursuant to 42 U.S.C. § 405(g), the district court has jurisdiction to review the Commissioner's final decisions. Judicial review under this statute is limited to determining whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner's decision employed the proper legal standards. *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999).

7

**B.      Framework for Social Security Disability Determinations**

Plaintiff's Social Security disability determination was made in accordance with a five step

sequential analysis.  In the first four steps, Plaintiff was required to show that:

1.  she was not engaged in substantial gainful employment; and
2.  she suffered from a severe impairment; and
3.  the impairment met or was medically equal to a "listed impairment;" or
4.   she did not have the residual functional capacity to perform her past relevant
work.

20 C.F.R. § 404.1520(a)-(f).  If Plaintiff's impairments prevented her from doing her past relevant

work, the Commissioner, at step five, would consider Plaintiff's RFC, age, education and past work

experience to determine if she could perform other work.  If she could not, she would be deemed

disabled.  20 C.F.R. § 404.1520(g).  The Commissioner has the burden of proof only on "the fifth

step, proving that there is work available in the economy that the claimant can perform." *Her*, 203

F.3d at 391.  To meet this burden, the Commissioner must make a finding "supported by substantial

evidence that [plaintiff] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y

of Health & Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987) (citation omitted).  This "substantial

evidence" may be in the form of vocational expert testimony in response to a hypothetical question

if the question accurately portrays the plaintiff's physical and mental impairments. *Id.* (citations

omitted).

**C.      Analysis**

Plaintiff argues that the ALJ erred when she failed to give controlling weight to Dr.

Mahmood's medical source statements and improperly assessed her credibility.

*1.      Treating Physician Rule*

It is well-settled that the opinions of treating physicians are generally accorded substantial

deference.  In fact, the ALJ must give a treating physician's opinion complete deference if it is supported by clinical and laboratory diagnostic evidence and it is not inconsistent with the other substantial evidence in the record.  20 C.F.R. § 404.1527(c)(2).  The Commissioner requires its ALJs to "always give good reasons in [their] notice of determination or decision for the weight [they] give [a] treating source's opinion." 20 C.F.R. § 404.1527(c)(2).  Those good reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Wilson v. Comm'r*, 378 F.3d 541, 544 (6th Cir. 2004) (citing Social Security Ruling (SSR) 96-2p, 1996 WL 374188, at *5 (1996)).

The record demonstrates that the ALJ considered the medical evidence, including Dr. Mahmood's medical source statements regarding Plaintiff's ability to do work-related activities. (TR 23).  The ALJ recognized that Dr. Mahmood believed that Plaintiff was able to lift only fifteen pounds and had an impaired ability to sit, stand, walk, reach, and push/pull.  The ALJ also recognized Dr. Mahmood's recommendation of surgery.  In considering the medical source statements, the ALJ noted that Dr. Mahmood failed to offer any opinion or explanation, or quantify in any way, the extent to which Plaintiff's physical impairments limited her ability to walk, stand, sit, reach, or push/pull.  In addition, Dr. Mahmood failed to identify any medical evidence or testing that supported his assessments, for example his assessment that Plaintiff was limited in her ability to reach.  Ultimately, the ALJ attributed some weight to Dr. Mahmood's assessment but not controlling weight, stating that the medical evidence failed to support Dr. Mahmood's findings in general and the doctor failed to provide explanations for his opinions.

The ALJ did not give controlling weight to Dr. Mahmood's assessments, yet she did assign

some weight to the opinions and even incorporated Dr. Mahmood's fifteen pound weight restriction into the RFC. In addition, the ALJ determined that Plaintiff must be permitted to alternate between sitting and standing at will which is not inconsistent with Dr. Mahmood's medical source statements. The ALJ did not adopt Dr. Mahmood's assessments that Plaintiff was limited in her ability to reach and could never climb, balance, stoop, crouch, kneel, or crawl. However, she did recognize Plaintiff's physical limitations by restricting her to only occasional postural activities and use of left foot controls.

The ALJ reviewed the evidence of record before she assigned limited weight to Dr. Mahmood's opinions. In doing so, she noted that Plaintiff's symptoms were conservatively treated with Tylenol #4, she had been noncompliant with physical therapy treatment, and she had been recommended for conservative treatment by Dr. Hong. The ALJ further noted that there was no evidence to show that Plaintiff was unable to ambulate effectively or that she needed to use an assistive device to walk.

While Plaintiff argues that the ALJ erred in failing to assign controlling weight to Dr. Mahmood's opinions, she fails to point to specific evidence in the record that the ALJ overlooked or failed to consider. Furthermore, Plaintiff does not cite to objective evidence that supports Dr. Mahmood's more restrictive physical assessments. The undersigned concludes that the ALJ's decision to attribute limited weight to Dr. Mahmood's medical source statements is supported by substantial evidence in the case record and should not be disturbed.

*2.    Credibility Assessment*

Next, Plaintiff argues that the ALJ's credibility assessment was legally insufficient. "[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and

10

deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters v. Comm'r*, 127 F.3d at 531 (citation omitted). But credibility assessments are not insulated from judicial review. Despite the deference that is due, such a determination must nevertheless be supported by substantial evidence. *Id.* An ALJ's credibility determination must contain "specific reasons . . . supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." Soc. Sec. Rul. 96–7p, 1996 WL 374186, at *4 (July 2, 1996).

The ALJ may not "reject [the claimant's] statements about the intensity and persistence of [her] pain or other symptoms or about the effect [her] symptoms have on [her] ability to work solely because the available objective medical evidence does not substantiate [her] statements." 20 C.F.R. § 404.1529(c)(2). Factors relevant to the claimant's pain symptoms include: (1) the claimant's daily activities, (2) the location, duration, frequency, and intensity of claimant's pain, (3) precipitating and aggravating factors, (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms, (5) treatment, other than medication, for pain relief, (6) any measures used to relieve the pain, and (7) functional limitations and restrictions due to the pain. 20 C.F.R. § 404.1529(c)(3); *see also Felisky v. Bowen*, 35 F.3d 1027, 1039-40 (6th Cir. 1994) (applying these factors).

The ALJ found that Plaintiff's allegations of her functional limitations were not fully credible. In fact, the ALJ found that evidence pointing to Plaintiff's inconsistent statements, noncompliance with therapy, possible overuse of medication, and possible malingering were very damaging to her credibility. Plaintiff challenges the ALJ's reliance on these matters to discount

11

Plaintiff's credibility. She argues that the physician who expressed concerns with malingering, Dr. Arnaout, was a resident and not a treating physician and his concerns of malingering were never realized or mentioned again in the record. She questions the ALJ's reliance on statements she made to her physicians in 2008, well before her hearing testimony and prior to her alleged onset of disability, that her pain was controlled with Tylenol #4 and did not affect her daily activities. She also questions the ALJ's reliance on statements made in the record that Plaintiff may be overusing her medication and had inconsistent straight leg test results between November 2008 and February 2009.

With regard to Plaintiff's concerns that the ALJ should not have relied on Dr. Arnaout's statements of malingering because he was a resident physician. Plaintiff fails to recognize that Dr. Arnaout's supervising physician also examined Plaintiff on the same date as Dr. Arnaout, discussed Plaintiff's condition with the resident, and agreed with his findings and plan. (TR 250). Moreover, the ALJ did not discount Plaintiff's credibility solely based on Dr. Arnaout's statement of malingering. Instead, the ALJ was also influenced by evidence that showed that Plaintiff was noncompliant with physical therapy recommendations and may have been misusing her prescription medication. While Plaintiff may not like that the ALJ considered these factors, they are documented in the evidence and are legitimate factors for the ALJ to consider.

The record shows that the ALJ reviewed Plaintiff's daily activities and found that she is able to perform her own hygiene, prepare simple meals for herself, travel by city bus, and ambulate effectively without use of an assistive device. And while the ALJ recognized that Plaintiff most likely had pain in her back, she also recognized that Plaintiff's pain symptoms were treated fairly conservatively with Tylenol #4. As for the ALJ's reliance on statements Plaintiff made to her

physicians in 2008, before her onset date and hearing testimony, the Court agrees with Defendant that while this evidence may have diminished probative value because they were made prior to her alleged onset date, they were not irrelevant and the ALJ did not err in considering this evidence along with the other evidence of record.

The substantial deference afforded to the ALJ in matters of credibility weighs against Plaintiff in this matter. The ALJ could reasonably conclude based on the evidence before her that Plaintiff's subjective complaints regarding the severity of her symptoms and the impact of those symptoms were not entirely credible. The ALJ's determination regarding Plaintiff's credibility are supported by substantial evidence, and therefore, the Court recommends denying Plaintiff's motion with regard to this issue.

**REVIEW OF REPORT AND RECOMMENDATION**:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not

13

later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.


Dated: April 19, 2013                    s/ Mona K. Majzoub_____
                                         MONA K. MAJZOUB
                                         UNITED STATES MAGISTRATE JUDGE



## PROOF OF SERVICE

I hereby certify that a copy of this Report and Recommendation was served upon Counsel of Record on this date.

Dated: April 19, 2013                    s/ Lisa C. Bartlett_____
                                         Case Manager